JAMES CALLANAN, Appellant, v. M. VOTRUBA.

Judgment: RENDITION: *Lien.* A judgment is not rendered so as to constitute a lien from the "time of such rendition," within the meaning of Code, section 380 ¹, until it is entered on the records of the court as required by section 3784, although a form of judgment has been signed by the judge and indorsed "Filed" by the clerk.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

TUESDAY, FEBRUARY 8, 1898.

ACTION to quiet title against two judgments in favor of the defendant. Decree was entered on the cross-petition of the defendant, establishing such judgments as liens on the plaintiff's lot, and he appeals.— *Reversed.*

*J. J. & E. A. Davis* for appellant.

*Day & Corry* for appellee.

LADD, J.—In September, 1895, McClure was the owner of a lot in the city of Des Moines, and conveyed it by warranty deed, delivered to plaintiff September 27, of the same year, in pursuance of an oral contract so to do made September 3, previous. The agreed con-sideration was eight hundred dollars, of which four hundred and sixteen dollars was credited on an ante-cedent indebtedness, and three hundred and eighty-four dollars, a mortgage on the lot, subject to which Calla-nan took the deed  Two judgments by default were ordered in favor of the defendant and against McClure September 24, 1895, and entries therefor were signed by the trial judge and indorsed "Filed" by the clerk, on the

same day, but were not recorded in the record book or
entered until the twenty-eighth or thirtieth of the same
month, and after the conveyance to Callanan.    Are
these judgments liens on the land?   Section 3801 of the
Code provides that "judgments in the supreme or dis-
trict courts of this state or in the circuit or dis-
trict courts of the United States, within this state, are
liens upon the real estate owned by the defendant at
the time of such rendition, and also upon all he may
subsequently acquire, for the period of ten years from
the date of the judgment."   What is meant by the
"time of such rendition?"   Rendering a judgment is the
judicial act of the court in pronouncing the sentence of
the law upon the facts in controversy, as ascertained
from the pleadings and the evidence; and, technically,
the ministerial act of spreading upon the record a state-
ment of the final conclusion reached by the court is not
included therein.    Black, Judgments, section 106;
*Shuster v. Rader*, 13 Colo. 329 (22 Pac. Rep. 505); *Blatch-
ford v. Newberry*, 100 Ill. 489; *Conwell v. Kuykendall*,
29 Kan. 707; *Hall v. Tuttle*, 40 Am. Dec. 382, and note;
*Stephens v. Santee*, 49 N Y., 39; *Durant v. Comegys*, 2
Idaho, 809 (35 Am. St. 267; 26 Pac. Rep. 755); *In re
Cook's Estate*, 77 Cal. 220 (11 Am. St. 276; 17 Pac.
Rep. 923, and 19 Pac. Rep. 431).    But, in con-
struing this statute, its relation to others on the
same subject, and the sense in which the words
are used, as determined by this court, must be
considered.   Every final adjudication of the rights
of the parties in an action is a judgment.   Code, section
3769.    All judgments and orders must be entered on
the record of the court, and must specify clearly the
relief granted or order made in the action.   Code, section
3784.   It will be noticed that the definition of a "judg-
ment" in the Code differs somewhat from that of some of
the lexicographers, in that it is a final adjudication.
*Zeigler v. Vance*, 3 Iowa, 528; *Taylor v. Runyon*, 3 Iowa,

474. See definitions by authorities collected in 12 Am. & Eng. Enc. Law. In *Humphrey v. Havens*, 9 Minn. 318 (Gil. 301), it was held that, where a writ of error must be issued within a year after the "rendition of judgment," the time began to run from the entry of judgment or order, on the record. The question was first suggested in this court in *Brown v. Scott*, 2 G. Greene, 454; Kinney, J., remarking: "We are at a loss to know how the justice could have rendered a judgment that would have any force or virtue without rendering that judgment in proper form in the docket which he is required by law to keep for that purpose. It is true, he might, in his mind, resolve upon entering the judgment; but, unless put into shape and form, it would be as though no judgment at all had existed in the mind." In *Case v. Plato*, 54 Iowa, 64, the court, through Day, J., after quoting the statutes, said: "It is apparent from the foregoing provisions that it is essential to the validity of a judgment that it should be entered upon the record book. This is the book in which a statement of the proceedings of the court is kept, and to which appeal must always be made to determine what has been done. The theory of the law is that it is kept under the direction and supervision of the judge, is approved by him, and constitutes the only proof of his acts." In *Balm v. Nunn*, 63 Iowa, 641, the opinion is by Beck, J., who said: "There can be no judgment until it is entered in the proper record of the court. It cannot exist in the memory of the officers of the court, nor in the memoranda entered upon the books not intended to preserve the record of judgments. * * * It is not competent to prove a judgment in any other way than by the production of the proper record thereof." *Insurance Co. v. Hesser*, 77 Iowa, 381, seems to be decisive. In that case, the judgment was erroneously indexed, and the court, in holding it was not a lien superior to a subsequent mortgage, bases its conclusion

on three grounds: (1) No constructive notice was
imparted owing to the failure to index; (2) the judg-
ment, before it becomes a lien, must be of record, *i e.*,
entered in the record book required by the statute; (3)
a judgment is not rendered, so as to be effective and
capable of enforcement, until it is "made up, finished,
stated or delivered," in the form and manner, and
entered of record as required by the statutes. Appellee
insists the last two grounds amount to no more
than dicta, but these are not stated in the way of argu-
ment, but as conclusions of law. In *Winter v. Coul-
thard*, 94 Iowa, 312, the court had announced its decis-
ions; but these had not been entered of record, and the
executions were held invalid because no judgments
existed. The judge's calendar is not a record of the
court, but entries therein announce his conclusions,
and are intended for the guidance of the clerk.
*Traer v. Whitman*, 56 Iowa, 443; *Miller v. Wolf*, 63
Iowa, 233; *State v. Manley*, 63 Iowa, 344; *Burroughs v.
Ellis*, 76 Iowa, 649. While not proof of a decree or judg-
ment, such minutes may tend to show a decree or judg-
ment has been ordered. *In re Edwards' Estate*, 58
Iowa, 431. If the record is the only proof of a judgment,
as has been repeatedly held by this court, then how can
a judgment be said to have been rendered before spread
on the records, when its very existence prior to that time
cannot be established? If the statute making the judg-
ment a lien "at the time of such rendition," refers to the
time of announcement by the judge, rather than when
entered on the proper books, it would certainly be
capable of enforcement by execution. Section 3954 of
the Code. But it was adjudged otherwise in *Winter v.
Coulthard, supra.* If the court has announced judg-
ment, the clerk may complete the record after the term.
Code, section 242. But until the record is prepared no
evidence exists of the rendition of the judgment. These
records are under the control of the court (section 248

of the Code), and through them it speaks the final adjudication defined by the statute as a judgment. Until so rendered, there is no judgment. The Code contains no provisions relating to judgment forms signed by the judge, and these amounted to no more than directions for judgments. Until recorded, they were not such, but merely evidence that the court had ordered judgments, and approved their form. This view finds support in *Babcock v. Wolf*, 70 Iowa, 676, and *Guthrie v. Guthrie*, 71 Iowa, 744. In these cases decisions were, by agreement, to be made in vacation, and were written and signed by the judges before the expiration of their terms of office, though not delivered in the clerk's office until afterwards. In the former it is said: "Now, we think the decision was made when it was deposited in the express office at Afton. Under the agreement of the parties, it was as complete then as if there had been no agreement, and the judge had entered a decision in his minutes in open court, because the parties agreed that the decision was not to be made at Clarinda." But it did not have the force of a judgment until spread upon the records as required by law.—REVERSED.