James ACKERMAN d/b/a Iowa Missouri Construction Company, Plaintiff,

v.

P. M. LAUVER d/b/a Lauver DX Service, Appellee,

v.

IOWA MUTUAL INSURANCE COMPANY, Appellant.

No. 2–57645.

Supreme Court of Iowa.

May 19, 1976.

David E. Green and William G. Polking, Carroll, for appellant.

Bernard L. Willis, Lake City, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

LeGRAND, Justice.

This matter originated as an insurance claim resulting from a windstorm which occurred on July 14, 1970. From that humble beginning it blossomed into a series of conflicting demands, counterclaims, and cross-petitions. This appeal challenges the judgment obtained by defendant, P. M. Lauver, on his cross-petition against his insurer, Iowa Mutual Insurance Company. We affirm the judgment.

A detailed recitation of facts is necessary before we discuss the issues before us.

The storm did substantial damage to a building owned by Lauver. He filed a claim against Iowa Mutual under his coverage for windstorm damage. His claim was referred to General Adjustment Bureau, Inc., an adjusting service, for investigation and settlement. General negotiated with James E. Ackerman, the plaintiff, who operates a construction business under the name of Iowa Missouri Construction Company, and authorized him to repair Lauver's building for $1,161.08. Lauver had no part in these negotiations nor did he approve Ackerman as the contractor to do the repair work.

After completion of the work undertaken by Ackerman, Lauver claimed all the damage had not been repaired. He alleged, too,

the work was faulty. Ackerman denied both charges. Iowa Mutual tendered Lauver a draft for $1,161.08 in payment of his damage. For some time Lauver refused to accept the payment or to sign a proof of loss. Eventually, however, he did so. He says this was the result of harassment by Iowa Mutual. Iowa Mutual, on the contrary, denies this and says Lauver accepted the draft voluntarily.

After the draft had been delivered to Lauver, he refused to pay Ackerman. Apparently this resulted from dissatisfaction with Ackerman's work.

Not having received payment, Ackerman started this action against Lauver for the amount of the repair bill. Lauver filed a counterclaim, asserting the work was only partially completed; that the part completed had not been done in a workmanlike manner; and that inferior materials had been used. The counterclaim also alleged Ackerman's conduct had resulted in additional damages to the building and asked both actual and exemplary damages.

Ackerman filed an answer to the counterclaim, denying generally the allegations against him and asserting much of Lauver's damage "was of his own making."

Later Ackerman was granted leave to bring Iowa Mutual into the case by way of cross-petition. The cross-petition was in two divisions. Division I asked contribution or indemnity if Lauver should recover on his counterclaim. Division II asked judgment against Iowa Mutual for the amount of the repairs to Lauver's building. Iowa Mutual then filed an answer denying the allegations of the cross-petition and alleging also it had discharged all obligation to pay for the repairs by delivering its draft to Lauver.

That is where the case stood when it went to trial before a jury. At that time the matters in litigation were as follows:

1. The claim of Ackerman against Lauver for repairs in the amount of $1,369.89 (the original repair bill of $1,161.08 plus extras of $208.81).

2. Counterclaim of Lauver against Ackerman for compensatory damages in the amount of $15,000 and exemplary damages in the amount of $30,000.

3. Cross-petition of Ackerman against Iowa Mutual as above set out.

On the second day of trial, Lauver asked permission to amend under Rule 88, Rules of Civil Procedure, by filing a cross-petition to allege Iowa Mutual had assumed all responsibility for making repairs to his building and that it had failed to "follow through" on this duty. He asked both actual and exemplary damages.

Iowa Mutual strenuously objected to the filing of this amendment, asserting it was not timely and that it injected new issues into the case. In allowing the amendment, the court stated there was no surprise, since all of these matters, even if not asserted directly, were known to Iowa Mutual and were elements in the case from the very start. Iowa Mutual did not ask for a continuance, although it insisted the late amendment deprived it of an opportunity to prepare and defend.

The matter then was tried to a conclusion. Before the case was submitted to the jury, several other significant events occurred. The court directed a verdict in favor of Ackerman against Lauver for the amount of the repairs (except for the additional $208 for extras, which item was submitted to the jury, and upon which Ackerman recovered).

The trial court also directed a verdict in favor of Ackerman on Lauver's counterclaim. Ackerman then dismissed his cross-petition against Iowa Mutual.

At the time the case went to the jury, then, the only issues submitted for determination were Ackerman's remaining claim against Lauver for $208 (which we disregard because it is not an issue on this appeal) and Lauver's claim against Iowa Mutual for the amount of his actual damages. Lauver's claim for exemplary damages was withdrawn from the jury.

The jury returned a verdict in Lauver's favor for $7,500, which under the instruc-

tions was reduced by the $1,161.08 already paid, so that Lauver's net recovery was $6,338.92. This was later reduced further by remittitur to $5,000.

The appeal presents these issues:

1. Error in allowing Lauver to amend his cross-petition during trial.

2. Error in refusing to submit mitigation of damages to the jury.

3. Error in overruling Iowa Mutual's motion for directed verdict on Lauver's claim against it.

4. Error in sustaining Ackerman's motion for directed verdict against Lauver.

5. Error in admission of evidence in violation of Statute of Frauds.

■ I. We first decide the issue raised by Lauver's late amendment. Amendments are the rule and denials the exception. The trial court has considerable discretion in allowing amendments. Rule 88, Rules of Civil Procedure; *Atlantic Veneer Corp. v. Sears*, 232 N.W.2d 499, 503 (Iowa 1975); *Mora v. Savereid*, 222 N.W.2d 417, 422 (Iowa 1974).

■ Amendments may be allowed at any time before the case is finally decided, even after completion of the evidence; but they should not be allowed under Rule 88 after a responsive pleading has been filed, if they substantially change the issues. *Atlantic Veneer Corp. v. Sears, supra*, 232 N.W.2d at 503; *Smith v. Village Enterprises, Inc.*, 208 N.W.2d 35, 37–38 (Iowa 1973).

The amendment belatedly asserted against Iowa Mutual by way of cross-petition the same claim for damages, both actual and exemplary, which Lauver had earlier made in his counterclaim against Ackerman.

In the counterclaim liability was based on Ackerman's negligent performance of the work done and failure to do all that should have been done. In the cross-petition, although not pled with great clarity (about which no complaint is made), liability is bottomed on Iowa Mutual's assumption of responsibility for repairs under its policy. Lauver claims the insurer then failed to "carry through" on its obligation to see that Ackerman faithfully repaired the storm damage.

The issues of the counterclaim and the cross-petition were identical, as was the relief sought, except in one case recovery was sought against Ackerman, in the other against Iowa Mutual.

Iowa Mutual was already alerted to Lauver's claim because Ackerman was then demanding either contribution or indemnity from it if Lauver should recover on the counterclaim.

■ Although the amendment amounted, as Iowa Mutual argues, to a new lawsuit, we hold it did not present any substantially different issues than those the company was already prepared to meet to defeat Ackerman's claim for contribution or indemnity.

■ Iowa Mutual earnestly challenges the trial court's order allowing the late amendment, claiming both surprise and lack of opportunity to defend. But it did not ask a continuance to eliminate these problems. We consider this issue solely as raised—that the ruling was an abuse of discretion under rule 88. No other rule or statute is relied on. In allowing an amendment under Rule 88, the trial court may impose terms as a condition of the allowance.

Failure to request time to prepare for trial of the "new" issues—a remedy it says it desperately needed—weighs against Iowa Mutual's argument on this appeal. *See Smith v. Village Enterprises, Inc., supra*, 208 N.W.2d at 38.

We hold the trial court did not abuse its discretion in allowing the late amendment.

II. Iowa Mutual also claims the trial court erred in denying its request for an instruction on mitigation of damages. We believe it will be helpful to relate the circumstances under which this question arose at trial.

Lauver claimed his damages were greatly enhanced by delay in making repairs and by the failure to repair all of the original dam-

age caused by the storm. This, he says, led to further deterioration of his property. From the amount of the verdict, it is obvious the jury agreed with him.

The evidence shows Lauver did nothing to protect his property and took no steps to avoid the additional damage for which he later made claim.

Mitigation of damages was not pled as a special defense. We recently considered a similar matter in *Whewell v. Dobson*, 227 N.W.2d 115, 120 (Iowa 1975) where we quoted with approval the following passage from *Nizzi v. Laverty Sprayers, Inc.*, 259 Iowa 112, 122, 143 N.W.2d 312, 317–318 (1966):

> "Where a plaintiff seeks damages for a wrongful act of defendant, plaintiff has the duty to minimize his damages, but the duty of proving that the damages could be minimized is on defendant * * * [citing authority]. These statutes [§§ 619.7 and 619.8, The Code] treat the matter of minimizing damages as a special defense which defendant must plead and prove or he is limited to circumstances growing out of plaintiff's testimony * * * [citing authority]."

As already mentioned, Iowa Mutual did not plead this special defense. It is therefore "limited to circumstances growing out of plaintiff's testimony."

The testimony shows only that Lauver took no remedial steps to protect his property from additional damages. The record is utterly silent as to what measures could have been taken. It is also silent as to what portion of his additional loss could be attributed to the storm and what portion to his own failure to minimize the damage. Under this state of the record, there was nothing to submit. Issues which have no evidentiary support should not be submitted to a jury for determination. *Mora v. Savereid, supra,* 222 N.W.2d at 419; *Wroblewski v. Linn-Jones FS Services, Inc.*, 195 N.W.2d 709, 711 (Iowa 1972).

The trial court was right in refusing the requested instruction.

III. Iowa Mutual asserts as error the trial court's denial of its motion for directed verdict, which was grounded on two claims. It is said, first, that Iowa Mutual's responsibility was fully discharged by payment to Lauver of the amount of his damages together with his execution of a proof of loss.

There is no merit to this claim. The proof of loss was not, and did not purport to be, a release. It was nothing more than a receipt for payment of the work done by Ackerman. This was acknowledged by at least one of Iowa Mutual's witnesses. In addition, Lauver testified Iowa Mutual's representative assured him at the time of signing that any further damage from the storm would be taken care of. For a statement of the limited purpose of a proof of loss, *see* 44 Am.Jur.2d, Insurance, § 1455 (1969).

The evidence discloses Lauver had resisted repeated efforts to induce him to accept the proffered draft. Only upon the assurances that further claim could be made under his policy did he eventually sign the proof of loss.

Under these circumstances the proof of loss presented no bar to Lauver's later claim for additional damage to his building.

Iowa Mutual also insists Lauver's claim cannot be urged against the company because the contract to repair was one between Lauver and Ackerman.

The dispute as to who were the contracting parties was a running feud throughout the trial. Of course, if Iowa Mutual is right, Lauver's action would lie solely against Ackerman.

The evidence is in violent conflict, but there was substantial testimony to permit the issue to go to the jury.

Iowa Mutual was obligated under its policy to compensate Lauver for his loss. While it vigorously insists it made no contract with Ackerman for repairs, the overall facts belie this. Lauver had no part in the negotiations with Ackerman, he did not select the contractor, he did not approve the estimate, he did not authorize the repairs.

All these matters were handled by Iowa Mutual through General Adjustment Bureau, Inc. Ackerman's bill was presented not to Lauver, but to Iowa Mutual at the request of General Adjustment. Until a dispute arose over both the quality and extent of the repairs, no one paid much attention to Lauver. Only then did it become *his* contract with Ackerman and *his* obligation to pay the repair bill.

When, as here, there is uncertainty about the terms of a contract, the practical construction placed on it by the parties themselves will usually be followed by courts. This would seem to be a particularly salutary rule when one who has acted to the contrary later insists he was not a party to the agreement. *Goering v. Jefferson,* 159 N.W.2d 409, 412 (Iowa 1968); *Hamilton v. Wosepka,* 261 Iowa 299, 154 N.W.2d 164, 172 (1967); *Theobald v. Weber,* 259 Iowa 452, 458, 143 N.W.2d 418, 422–423 (1966).

The trial court was right in overruling the motion for directed verdict.

IV. Iowa Mutual next complains because the trial court sustained Ackerman's motion for directed verdict against Lauver. Lauver did not appeal from the adverse ruling. Without passing on the correctness of the trial court's decision, we hold Iowa Mutual cannot have a reversal because the court—correctly or incorrectly—decided the claim of two other litigants. *Peters v. Peters,* 214 N.W.2d 151, 154 (Iowa 1974); *Eden Township School District v. Carroll County Board of Education,* 181 N.W.2d 158, 163 (Iowa 1970); *Harmon v. Hutchinson Ice Cream Co.,* 215 Iowa 1238, 1242, 247 N.W. 623, 624 (1933).

V. We have considered the last issue raised, alleging that the trial court erroneously allowed evidence of an oral contract to be introduced in violation of the Statute of Frauds.

Iowa Mutual relies on that portion of § 622.32, The Code, which provides that evidence to prove a contract to pay another's debt must be in writing.

Since we have already held that the contract in dispute was Iowa Mutual's own undertaking, it follows there is no merit to this claim of error.

VI. There is one other matter which, although not raised by the parties, should be resolved. The trial court granted a new trial on condition Lauver remit all of the judgment in excess of $5,000. He did so, but Iowa Mutual nevertheless appealed. Since that appeal has proven unsuccessful, the trial court remittitur is set aside and the original judgment for $6338.92 is reinstated. *See* Rule 250, R.C.P.; *Ives v. Swift and Co.,* 183 N.W.2d 172, 178 (Iowa 1971) and citations.

With the above modification, the judgment is affirmed.

MOORE, C. J., and MASON and McCORMICK, JJ. concur.

HARRIS, J., dissents.

HARRIS, Justice (dissenting).

I respectfully dissent from division I and the result. Defendant Lauver should not be allowed to stand on rule 88, Rules of Civil Procedure, in order to "amend" a claim not previously made. This extraordinary effort was obviously made because it was too late to bring a cross-petition under rule 33, R.C.P. Defendant Lauver asserted in his motion to amend, and on appeal, he was proceeding under rule 88. He was improperly allowed thereunder to bring a new suit against the coparty whom he had not previously sued.

Rule 88 is inappropriate and inadequate for defendant's purposes. Defendant had no existing pleading against the company which he could amend. The new suit, for lack of a better home, was appended to a pleading seeking other relief against other parties.

By the time defendant decided to bring a claim against the company the trial was already in its second day. It was obviously too late for defendant to proceed under rule 33 at that time because the rules clearly provide the company then could have the regular time to answer and to proceed as a new coparty. Defendant should not be al-

lowed to deprive the company of its time to answer and prepare a defense merely because it may have prepared to meet the same issues on other claims by other people in the suit. I believe the majority's allowance is a misuse and misapplication of rule 88.

Since defendant did not seek to do so, it is probably unnecessary to speculate whether he could, on the second day of trial, have cross-petitioned under rule 33. But see *Miller v. Farmers Cooperative Company, Lost Nation,* 176 N.W.2d 832 (Iowa 1970); 61 Am.Jur.2d, Pleading, § 186, pp. 610–611.

I freely subscribe to the allowance of amendments to existing pleadings where it is in the interests of justice. But even if authority to *amend* meant authority to *cross-petition and demand immediate answer* it would abuse discretion to allow it here. The liberal provisions of rule 88 are aimed at the avoidance of injustice by entrapment or harmless oversight. They are not intended for use as an offensive weapon. The amendment here sets up an ambush.

The majority points out the new suit presented substantially the same issues the company was already prepared to meet to defend the claim of another party for contribution or indemnity. But the extent of that preparation, its nature, whether it might include taking of depositions, even selection of trial counsel, were all based on the posture of the suit as it went to trial. A party should have the right to calculate its risks on the basis of the suit existing at the commencement of trial. Here the trial process cleared the courtroom of most of the litigants and claims. To then allow this new, though admittedly similar, suit to be lodged against the unsuspecting remaining party goes beyond what I consider fair play and the proper bounds of discretion.

I would reverse.